IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | |
| v. : | Criminal Action No. 14-13-12 RGA |
| JAMAR CANNON, : | |
| Defendant. : | |

**OPINION AND ORDER ON MOTION TO SUPPRESS WIRETAP EVIDENCE**

The Defendant, Jamar Cannon, has filed a motion to suppress wiretap evidence. (D.I. 381). The United States has filed a response. (D.I. 408, 454). Defendant subsequently filed a "Supplemental Motion to Suppress," essentially raising the same arguments. (D.I. 423). The Court held a hearing on September 2, 2015. Defendant raises two issues.

First, Defendant argues that the second wiretap application ("Ingram Affidavit") did not make "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Accordingly, Defendant argues that the authorizing judge could not have found from the affidavit that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(3)(c). In sum, Defendant argues that the Ingram Affidavit provides insufficient averments of "necessity" to meet the statutory requirements under Title III.

Specifically, Defendant argues that the Government did not make a separate showing of necessity for a wiretap of Leshawn Ingram's phone, but instead impermissibly relied on the same

1

facts that established the necessity of the first wiretap application ("Sturgis Affidavit"), which targeted Edward Sturgis. (D.I. 381 at 5–8). Defendant relies on the Ninth Circuit case, *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1115 (9th Cir. 2005), and its progeny for the proposition that "the government is not free to transfer a statutory showing of necessity from one application to another—even within the same investigation." (D.I. 381 at 6 (quoting *Gonzalez*, 412 F.3d at 1115)). Accordingly, Defendant argues that the Government merely "bootstrapped" off of the original Sturgis Affidavit and therefore "failed to establish facts that normal investigative techniques were tried and failed or reasonably appeared to be unlikely to succeed or to be [too] dangerous before applying for the electronic surveillance of the target telephone 3 allegedly used by Leshawn Ingram." (*Id.* at 7). Defendant further argues that the Ingram Affidavit contains only boilerplate recitations of necessity and includes essentially the same facts as the Sturgis Affidavit, but merely adds Leshawn Ingram's name to it. (*Id.*; D.I. 423 at 5–7).

The Government contends that the Ingram Affidavit meets the necessity standard as set forth in Third Circuit precedent, which only requires the Government to prove "that there exist a factual predicate in the affidavit" that normal investigative procedures are unlikely to be successful or would be too dangerous. (D.I. 454 at 9–10 (quoting *U.S. v. Armocida*, 515 F.2d 29, 38 (3d Cir. 1975))). It further emphasizes that under Third Circuit precedent, the burden on the Government "'is not great.'" (*Id.* at 10 (quoting *Armocida*, 515 F.3d at 38)). The Government also argues that the Ingram Affidavit contains specific averments as to why a wiretap of Leshawn Ingram's phone was necessary to determine the full scope of the drug-trafficking conspiracy and points to several portions of the affidavit discussing events specifically pertaining to Leshawn Ingram. (*Id.* at 12–14).

2

Whether the application contained the requisite "full and complete statement" of necessity under § 2518(1)(c) is a question of law. *See United States v. Heilman*, 377 F. App'x 157, 175 (3d Cir. 2010). The issuing court's determination under § 2518(3)(c), however, regarding whether other investigative methods were or might have been successfully employed, requires the exercise of considerable discretion. *See id.* Here, the Ingram Affidavit contains a lengthy, 18-page statement describing the wiretap's necessity. (Ingram Aff. ¶¶ 85–118). Accordingly, the inquiry here is whether the issuing court abused its discretion in finding that this statement satisfied the requirements of § 2518(3)(c).

The necessity requirement, as laid out in 18 U.S.C. §§ 2518(1)(c) and 2518(3)(c), is "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). These provisions, therefore, do "not require the government to exhaust all other investigative procedures before resorting to electronic surveillance." *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997). "Rather, evidence that normal investigative techniques reasonably appear unlikely to succeed if tried is sufficient." *United States v. Brooks*, 351 F. App'x 767, 771 (3d Cir. 2009) (citation omitted). "Although mere generalities and conclusory statements will not suffice, the government need only lay a factual predicate sufficient to inform the judge why other methods of investigation are not sufficient." *Id.* (citations and internal quotations omitted). Courts have directed that the government's showing be "tested in a practical and commonsense fashion" and have found it "sufficient that the government show that other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation." *United States v. Vento*, 533 F.2d 838, 849 (3d Cir. 1976) (citation and internal quotations omitted).

3

The Third Circuit has repeatedly held that, even where traditional investigative techniques have been successful in implicating one or more members of a large-scale conspiracy, wiretaps are permissible where traditional investigative measures will not meet the government's objectives of ascertaining the scope of an alleged conspiracy and identifying all of its participants. *See Armocida*, 515 F.2d at 38; *Vento*, 533 F.2d at 850 ("Although normal investigative techniques might have been sufficient to implicate [Defendant] in thefts from interstate shipment, such approaches could not show the scope of the conspiracy or the nature of [Defendant's] on-going criminal activity. . . . In the proper circumstances, the instrumentalities of Title III may be employed to discover the full extent of crimes and conspiracies."); *see also Brooks*, 351 F. App'x at 771 (finding that affidavits submitted with wiretap application adequately "explain why several traditional investigative techniques were of limited effectiveness due to the size and structure of the [heroin distribution] conspiracy"); *United States v. Lee*, 339 F. App'x 153, 157 (3d Cir. 2009) (agreeing with district court that "the wiretap was necessary to fully identify co-conspirators and their roles, which, at the time of the application, remained unclear." (internal quotation marks omitted)). In fact, the Third Circuit directly stated in *Armocida*, that "[a]lthough the government has actual knowledge of a conspiracy and evidence sufficient to prosecute one of the conspirators, it is unrealistic to require the termination of an investigation before the entire scope of the narcotics distribution network is uncovered and the identity of its participants learned." *Armocida*, 515 F.2d at 38 (citations omitted).

In *United States v. Williams*, the Third Circuit explained that, in assessing the Title III necessity requirement, "the inadequacy of other investigative techniques has been proven by demonstrating such factors as the inability of a confidential informant to gather additional information . . . the use of evasive tactics by the investigation's targets, and the difficulty of

4

penetrating an organization with a secretive nature and a propensity towards violence." *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997). Likewise, in *Brooks*, the court credited the affidavit's averments as to "the limited value of physical surveillance, the limited effectiveness of search warrants, grand jury subpoenas and witness interviews, and the ineffectiveness of controlled buys," as "suffic[ing] to demonstrate that a wiretap was likely to succeed where other techniques had failed or would fail in gathering essential information about the heroin distribution ring." *Brooks*, 315 F. App'x at 771.

The Third Circuit's recent decision in *United States v. Heilman* is particularly instructive as to Defendant's bootstrapping argument. *See United States v. Heilman*, 377 F. App'x 157 (3d Cir. 2010). In *Heilman*, a case involving a motorcycle gang that ran a large-scale methamphetamine distribution ring, Defendant Napoli argued that a wiretap must be suppressed because "the wiretap affidavit for his phone did not establish necessity because law enforcement did not conduct any new or independent investigation with respect to [him]." *Id.* at 190. Indeed, the district court noted that "the wiretap affidavits for [a different Defendant's] phone and Napoli's phone are virtually the same." *Id.* Accordingly, Napoli argued that "the vast similarity demonstrate[d] that law enforcement relied solely upon the investigation that been completed to date with respect to [the other Defendant] to establish necessity to electronically survey Napoli." *Id.* (internal quotation marks omitted). The Third Circuit flatly rejected this argument, stating in pertinent part:

> Napoli's argument misses the mark. He suggests that the investigation of Johnson and Napoli were distinct, by suggesting that the investigation of Johnson was somehow not an investigation of him as well, but this is not the case. The wiretap applications make clear that law enforcement investigated Johnson, Napoli, and many other Breed members as part of a larger investigation of a drug conspiracy. . . . Therefore, we hold that the District Court did not abuse its discretion when it found that the wiretap application for Napoli's phone established necessity, even

5

though much of the evidence referenced to establish necessity was also referenced in the wiretap application for Johnson's second phone.

*Id.* (internal citation omitted).[1]

Here, throughout both the Sturgis and Ingram Affidavits, the Government repeatedly contends that its principal target objective is to discover the scope of the large-scale narcotics-distribution conspiracy involving the SMM Bloods. (*See, e.g.,* Ingram Aff. ¶¶ 17, 96, 100–01). Much like in *Armocida, Vento, Brooks,* and *Lee,* the Ingram Affidavit supports the Government's argument that while traditional investigative techniques have generated incriminating evidence against certain defendants, they have been and will likely continue to be unsuccessful in ascertaining the full scope and structure of the alleged narcotics-distribution conspiracy. Specifically, the Ingram Affidavit states that the ten confidential informants used in the investigation thus far cannot provide "proactive assistance for fear of retaliation from SMM" and that all of the Government's informants are "isolated from gang business and details which would be relevant" to the investigation's target objectives. (Ingram Aff. ¶ 103). The affidavit further avers that the investigation's subjects have used evasive tactics and have demonstrated,

---

[1] To the extent Defendant relies on Ninth Circuit case law in support of his necessity arguments, this Court is bound by clear and consistent Third Circuit precedent. In any event, all three cases relied upon by Defendant are distinguishable in that the Ninth Circuit found that each of the affidavits supporting the wiretaps at issue contained material misstatements and omissions, and that purged of such, the applications contained "only generalized statements that would be true of any narcotics investigation." *United States v. Blackmon,* 273 F.3d 1204, 1208 (9th Cir. 2001); *see also United States v. Gonzalez, Inc.,* 412 F.3d 1102, 1111 (9th Cir. 2005); *United States v. Carneiro,* 861 F.2d 1171, 1183 (9th Cir. 1988). Defendant makes no such argument regarding misstatements or omissions here, and the Ingram Affidavit contains ample averments regarding the necessity requirement that are specific to the context of this particular investigation.

Moreover, these Ninth Circuit cases do "not go so far as to require a new showing of necessity as to each and every member of a conspiracy." *United States v. Welty,* 2013 WL 690528, at *2 (D. Mass. 2013) ("The rule is different where the subsequent application is simply an expansion of the predecessor application" (citation omitted)). Rather, a more recent Ninth Circuit decision seems to temper any overly broad interpretation of the Ninth Circuit decisions relied upon by Defendant:

> [T]he necessity requirement is directed to the objective of the investigation as a whole, and not to any particular person. If the Government can demonstrate that ordinary investigative techniques would not disclose information covering the scope of the drug trafficking enterprise under investigation, then it has established necessity for the wiretap.

*United States v. Reed,* 575 F.3d 900, 911 (9th Cir. 2009).

6

specifically referencing an event involving Leshawn Ingram, an awareness of surveillance efforts. (*Id.* ¶¶ 94, 98; D.I. 453 at 1 (clarifying affidavit's cross references)). The Ingram Affidavit also mentions that the SMM Bloods gang operates out of multiple locations that are in "areas notorious for drug-related violence." (Ingram Aff. ¶ 92). Likewise, the affidavit avers that the use of search warrants, grand jury subpoenas, and witness interviews would be premature and would tip off the conspirators to the investigation, preventing law enforcement from achieving its target objectives. (*Id.* ¶ 109, 112, 113).

The affidavits show that the Government did not seek to use wiretaps as a first step in its investigation. The ATF investigation into the SMM Bloods began in September 2012 and the Ingram wiretap application was not filed until February 11, 2014. (Sturgis Aff. ¶ 28, Ingram Aff. p.1). The Ingram affidavit describes the numerous normal investigative procedures that had been utilized up until that point, and adequately explains why, in reaching the investigation's target objective of determining the full scope of this large cocaine distribution ring, "'normal investigative techniques reasonably appear unlikely to succeed if tried or to be too dangerous.'" *See Brooks*, 351 F. App'x at 771 (quoting 18 U.S.C. § 2518(3)(c)). Assessing the Ingram Affidavit in "a practical and commonsense fashion," it would surely be "impractical" to require the Government to continue spinning its wheels with investigative techniques that may not only be dangerous for the individuals involved, but that would also likely be fruitless in moving the overall investigation toward its target objectives. *See Vento*, 533 F.2d at 849. Here, much like in *Armocida*, it would be unreasonable "to require the termination of an investigation before the entire scope of the narcotics distribution network is uncovered and the identity of the participants learned." *Armocida*, 515 F.2d at 38.

7

Lastly, Defendant's bootstrapping argument misses the mark much like the argument made by the defendant in *Heilman*. Defendant's argument that the investigation of Edward Sturgis was in some way distinct from its investigation of Leshawn Ingram is contrary to the record. Both wiretap applications make clear that the ATF investigation targeted the SMM Bloods gang and its drug-trafficking operations as a whole, including its "drug distribution associates." (*See, e.g.*, Sturgis Aff. ¶ 36–37; Ingram Aff. ¶ 17). In fact, the original Sturgis Affidavit plainly lists Leshawn Ingram as one of the "Target Subjects" of the ATF investigation, and describes him as "a large scale dealer of Sturgis' cocaine." (Sturgis Aff. ¶¶ 11, 37). The Ingram Affidavit goes on to discuss in considerable detail the information gleaned from the Sturgis wiretap, which suggested that, in addition to being a dealer of Sturgis' cocaine, Ingram was now playing an even more prominent role in the conspiracy than first anticipated, by acting as a supplier of Sturgis' cocaine as well. (Ingram Aff. ¶¶ 26–27, 40, 42, 44, 57, 59, 60, 62, 64, 65, 67, 73–74).

Much like in *Heilman*, both wiretap applications make clear that law enforcement was investigating both Sturgis and Ingram, among numerous other cohorts, as a part of a larger investigation into a drug-trafficking conspiracy. *See Heilman*, 377 F. App'x at 190. While Sturgis was targeted as the leader of this drug-trafficking operation, the significant investigative work done before the first wiretap application was aimed at all of the "Target Subjects" participating in drug-trafficking activities, not merely Sturgis in isolation. Indeed, the Sturgis Affidavit discussed the need for the Sturgis wiretap in the context of the investigation of the large-scale narcotics conspiracy as a whole, rather than just targeting Sturgis individually. Once Ingram's more prominent role in the drug-trafficking activities came to light after the Sturgis wiretap, it is hardly surprising that, in the context of the ATF investigation into the drug

conspiracy as a whole, the facts underlying the necessity for the Ingram wiretap overlapped with those involved in the Sturgis wiretap.[2] Accordingly, given the extensive scope of the investigation, the Government's conclusion that the Ingram wiretap was necessary was entirely reasonable, and the issuing judge's conclusion that necessity was established by the Ingram Affidavit was not an abuse of discretion.

In his second suppression argument, Defendant argues that the Ingram affidavit did not establish probable cause for the wiretap on Target Telephone #3, belonging to Leshawn Ingram. (D.I. 381 at 8). In support of this contention, Defendant avers that "the government acted [prematurely]" and "never gave probable cause a chance to [develop]." (*Id.* at 12). Defendant essentially argues that once Leshawn Ingram stopped using his previous cell phone ("Predecessor Telephone #1") and activated a new cell phone ("Target Telephone #3") around January 29, 2014, Ingram conducted no further illegal activity via Target Telephone #3 in order to give the Government probable cause to intercept communications for that phone as of February 11, 2014, when the Ingram wiretap application was presented to and approved by the issuing judge. (*Id.*). The Government's arguments address probable cause more broadly, discussing the affiant's "experience and expertise in narcotics investigations" and pointing out numerous places in the affidavit suggesting that Leshawn Ingram was involved in drug-trafficking activity with Edward Sturgis. (D.I. 454 at 16–17).

In this context, the probable cause standard is set forth in Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Under Title III, a judge may grant an application for

---

[2] In any event, despite the similarity, the Sturgis Affidavit and the Ingram Affidavit are not entirely the same. The Government does include references in the necessity section of the Ingram Affidavit that specifically discuss Ingram's awareness of physical surveillance during the investigation and an instance where Ingram fled from and evaded state troopers that tried to stop him on the highway. (Ingram Aff. ¶¶ 68–70, 78). Moreover, a reading of the Ingram Affidavit in its entirety, describing the steps taken in the investigation as a whole and discussing Ingram's significant role in the narcotics-distribution conspiracy, provides a sufficient factual predicate for a finding of necessity within the context of the investigation.

9

authorization to intercept wire communications if the judge determines, after reviewing the facts submitted by the applicant, that:

> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
>
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception . . . .
>
> (d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3). The Title III probable cause requirements are assessed under the same Fourth Amendment principles that apply in property search cases. *See United States v. Tehfe*, 722 F.2d 1114, 1118 (3d Cir. 1983). Accordingly, an issuing judge's "determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citation and internal quotations omitted). An issuing judge's finding of probable cause will therefore be upheld as long as the judge had a "substantial basis for concluding" that a wiretap would meet the probable cause criteria set forth in § 2518(3). *See id.* (internal quotation marks omitted).

I find that the issuing judge had a more than substantial basis for concluding that a wiretap of Leshawn Ingram's phone would lead to evidence of the specific drug-trafficking activity described in the affidavit. The Ingram Affidavit provides ample averments such that the issuing judge could reasonably have concluded not only that Leshawn Ingram was participating in drug-trafficking activity, but also that he was using Target Telephone #3 to do so. (*See, e.g.*, Ingram Aff. ¶¶ 26–27, 40, 42, 44, 57, 59, 60, 62, 64, 65, 67–70, 73–75). The Ingram Affidavit, prepared by an ATF agent with considerable experience in narcotics investigations, describes

10

Leshawn Ingram's use of Predecessor Telephone #1 to communicate with Edward Sturgis (as heard on the Sturgis wiretap) about their joint drug-trafficking operations in considerable detail. (*Id.* ¶¶ 56–67). Further, the affidavit explains that Ingram discontinued his use of Predecessor Telephone #1 on January 29, 2014, after an incident where Delaware State Police attempted to pull him over, but he fled and evaded the officers. (*Id.* ¶¶ 68–70). Finally, the affiant explains how, as of January 30, 2014, he was able, through continued interceptions of communications on Edward Sturgis' phone, to ascertain that Leshawn Ingram activated a new prepaid cell phone, identified as Target Telephone #3, with which Ingram continued to communicate with Sturgis concerning their drug-trafficking activities. (*Id.* ¶¶ 73–75).

Defendant's argument that the issuing judge acted prematurely and failed to allow probable cause to develop as to Target Telephone #3 is unconvincing and unsupported by the record. Defendant's argument essentially amounts to a suggestion that once Leshawn Ingram dropped his previous prepaid cell phone number in an effort to evade law enforcement and activated a new prepaid cell phone, the Government must start from scratch in establishing probable cause. Accepting Defendant's argument would effectively allow individuals to prevent the Government from establishing probable cause by simply cycling through different prepaid cell phones often enough. Accordingly, I conclude that the issuing judge had a substantial basis for determining that the Ingram Affidavit met the probable cause criteria set forth in 18 U.S.C. § 2518(3).

The motion to suppress wiretap evidence (D.I. 381) is **DENIED**.

It is SO ORDERED this 21 day of October, 2015.

Richard G. Andrews
United States District Judge

11